1  **WO**

7  **IN THE UNITED STATES DISTRICT COURT**

8  **FOR THE DISTRICT OF ARIZONA**

Levi Jaimes Jackson,                    )        No. CV-01-545-TUC-RCC
                                        )
          Petitioner,                   )
                                        )
vs.                                     )        **MEMORANDUM OF DECISION**
                                        )        **AND ORDER**
Charles L. Ryan, et al.,[1]             )
                                        )
          Respondents.                  )
_____ )

Before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and a supplement to the amended petition. (Dkts. 23 and 45.)[2] The Court has considered Petitioner's claims and concludes that he is not entitled to federal habeas relief.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1994, Petitioner was convicted of one count each of first degree murder, dangerous kidnapping, and dangerous armed robbery. The trial judge sentenced him to death for the murder and to consecutive, aggravated twenty-one-year terms of imprisonment for the non-capital counts. In its order affirming Petitioner's convictions and sentences, the Arizona

---

[1]   Charles L. Ryan, Interim Director of the Arizona Department of Corrections, is substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2]   "Dkt." refers to documents in this Court's file.

Supreme Court summarized the facts as follows:

> On December 7, 1992, Patricia Baeuerlen drove out of her apartment complex and stopped at the corner of 24th Street and Columbus Avenue in Tucson. Jackson, Kevin Miles, and Ray Hernandez were standing near the stop sign. Jackson approached her car and asked her for a "light." Tr. Jan. 19, 1994 at 44. As she looked away, Jackson pulled out a gun, pointed it at her and ordered her to "scoot over." *Id.* Jackson, Miles, and Hernandez then got into the car.

> Jackson drove to a desert area on the southeast side of Tucson. When they stopped, Jackson ordered the victim out of and away from the car. Several minutes later, Jackson shot her. She died from a gunshot wound to the heart.

*State v. Jackson*, 186 Ariz. 20, 23, 918 P.2d 1038, 1041 (1996).

Following an unsuccessful petition for certiorari to the United States Supreme Court, *Jackson v. Arizona*, 519 U.S. 1015 (1996), Petitioner filed in state court a petition for post-conviction relief ("PCR") pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. The PCR court denied the petition in May 2000, and the Arizona Supreme Court summarily denied a petition for review in October 2001.

Thereafter, Petitioner initiated this action by filing a petition for writ of habeas corpus. He filed an amended petition raising fifteen claims for relief in June 2002. (Dkt. 23.) After the conclusion of briefing on Petitioner's claims, the United States Supreme Court ruled in *Roper v. Simmons*, 543 U.S. 551 (2005), that the Eighth Amendment prohibits the execution of one who was under the age of eighteen at the time of the crime. Because it was undisputed that Petitioner was sixteen years of age at the time of the offense, this Court granted Petitioner's motion to dismiss his sentencing claims as moot.[3] (Dkt. 44.) Petitioner subsequently returned to state court, which vacated the death sentence and imposed a 25-years-to-life term of imprisonment. Without objection from Respondents, Petitioner filed a supplement to his pending habeas petition to add three new claims arising from the state court's actions with regard to the change in sentence. (Dkts. 45, 47.)

---

[3] As designated in his amended petition, these are Claims 2 (execution of juvenile offender), 8 (*Gardner* violation), 9 (proportionality review), 11 (*Enmund/Tison* findings), 12 (expansion of aggravating factors), and 15 (*Apprendi* claim).

# EXHAUSTION AND PROCEDURAL DEFAULT

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

Respondents assert that a number of Petitioner's claims (or subparts of his claims) are procedurally barred, either because they were not expressly raised on appeal or in Petitioner's first PCR petition or because the PCR court found the claims precluded as waived on appeal. (Dkt. 30 at 17, 21, 26, 27, 30, 35.) The Court finds each allegation insufficient to bar review on the merits of Petitioner's claims.

Notwithstanding Respondents' assertions to the contrary, Petitioner alleged in his PCR petition independent federal constitutional violations based on the trial court's failure to define reasonable doubt (Claim 1), the prosecutor's closing argument regarding reasonable doubt (Claim 1), and the prosecutor's opening statement regarding co-defendant Hernandez (Claim 10). (Dkt. 31, Ex. G at 3, 38.) Likewise, Petitioner asserted in his appellate opening brief a federal constitutional violation based on the trial court's denial of his motion to admit other act evidence concerning Hernandez (Claim 14). (Dkt. 31, Ex. B at 34.) Thus, these claims are properly exhausted and appropriate for review on the merits.

Although the PCR court ruled that a number of Petitioner's claims alleging ineffective assistance of counsel ("IAC") were precluded because they could have been presented on direct appeal (Dkt. 31, Ex. L at 2), such ruling does not prohibit federal habeas review because it is not an adequate bar. To satisfy the adequacy requirement, a state procedural bar must have been firmly established and regularly followed at the time of the purported default. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *see also Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001) ("A procedural default rule is firmly established and regularly

followed only if it is clear, consistently applied and well established at the time of petitioner's purported default."). At the time of Petitioner's alleged default, Arizona did not have a firmly established procedural rule precluding as waived IAC claims asserted in a first PCR petition filed after the conclusion of the direct appeal. *See State v. Spreitz*, 202 Ariz. 1, 2, 39 P.3d 525, 526 (2002). In *Lambright*, the Ninth Circuit reviewed the same alleged procedural bar and held that no Arizona case at the time of Lambright's purported default in 1984 required that he raise IAC claims on direct appeal. 241 F.3d at 1203-04. Accordingly, the PCR court's preclusion ruling is not adequate to bar federal habeas review, and the IAC aspects of Claims 1, 3, 6, 7, and 10 are properly before this Court for review on the merits.

## AEDPA STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists

- 4 -

of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 127 S. Ct. 649 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381. Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert*, 393 F.3d at 974.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. In order for a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *see also Woodford v. Visciotti*, 537 U.S. 19, 25

1  (2002) (per curiam).

2  Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state

3  court decision was based upon an unreasonable determination of the facts. *Miller-El v.*

4  *Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual

5  determination will not be overturned on factual grounds unless objectively unreasonable in

6  light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537

7  U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

8  In considering a challenge under § 2254(d)(2), state court factual determinations are

9  presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by

10  clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at 240.

11  However, it is only the state court's factual findings, not its ultimate decision, that are subject

12  to § 2254(e)(1)'s presumption of correctness. *Miller-El I,* 537 U.S. at 341-42 ("The clear and

13  convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to

14  state-court determinations of factual issues, rather than decisions.").

15  As the Ninth Circuit has noted, application of the foregoing standards presents

16  difficulties when the state court decided the merits of a claim without providing its rationale.

17  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160,

18  1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). In those

19  circumstances, a federal court independently reviews the record to assess whether the state

20  court decision was objectively unreasonable under controlling federal law. *Himes*, 336 F.3d

21  at 853; *Pirtle*, 313 F.3d at 1167. Although the record is reviewed independently, a federal

22  court nevertheless defers to the state court's ultimate decision. *Pirtle*, 313 F.3d at 1167

23  (citing *Delgado*, 223 F.3d at 981-82); *see also Himes*, 336 F.3d at 853. Only when a state

24  court did not decide the merits of a properly raised claim will the claim be reviewed de novo

25  because in that circumstance "there is no state court decision on [the] issue to which to

26  accord deference." *Pirtle*, 313 F.3d at 1167; *see also Menendez v. Terhune*, 422 F.3d 1012,

27  1025-26 (9th Cir. 2005); *Nulph v. Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

28

## MERITS DISCUSSION

**Claim 1:  Reasonable Doubt Instruction**

Petitioner argues that his right to due process was violated when the trial court denied his request for a jury instruction defining reasonable doubt and when the prosecutor during closing argument described reasonable doubt as requiring a "mere belief" that the defendant was guilty.  (Dkt. 23 at 2-8.)  He further asserts that trial and appellate counsel's failure to raise this issue amounted to constitutionally ineffective assistance of counsel.  (*Id.* at 8.)

At the conclusion of trial, the judge denied Petitioner's request to instruct the jury on the meaning of reasonable doubt.  (Dkt. 24, Ex. 1 at 7.)  During closing argument, the prosecutor told the jury:

> Now, one of the laws you are going to be asked to apply is the law called reasonable doubt.  What that law says is, first, the defendant is presumed to be not guilty, because in this country you don't presume anybody guilty.  The State has got to prove it.  Not only does the State have to prove it, the State has to prove it beyond a reasonable doubt.
>
> Now, listen carefully when the Judge reads you that instruction.  Mr. Cooper and I know what the Judge is going to tell you because he has already told us what he is going to tell you.  You are not going to hear anything like you hear sometimes on TV: beyond a shadow of doubt.  Watch TV, sometimes they say so and so proved it beyond a shadow of doubt.  Maybe, but that's not the law.  The State only has to prove it beyond a reasonable doubt, and it is a reasonable doubt that is the standard in every criminal case, from a DUI to a burglary to a first degree murder case. . . .
>
> What does that mean, beyond a reasonable doubt?  I don't know.  You're not going to get an instruction that defines it.  You have to figure it out.
>
> I submit to you, just on the face of the language, you are reasonable people, if you believe the defendant was involved, then the State has proven its case beyond a reasonable doubt.
>
> Now we don't – this is not some kind of contest where we have to score so many points to win.  All that is required is that 12 reasonable people believe that the defendant is guilty.
>
> I have had juries tell me, you know, you convinced me that he is guilty, but you didn't convince me beyond a reasonable doubt.  Wait a minute.  If you are convinced, unless you are unreasonable, unless you are unfair, unless you are leaning towards the State from the start, you are convinced beyond a reasonable doubt. . . .
>
> When you hear about reasonable doubt, remember it applies the same to every defendant, every case, no matter what the age or the possible penalty,

and it is not beyond all doubt or every doubt or to a scientific certainty, it is just beyond a reasonable doubt.

(Dkt. 24, Ex. 2 at 13-15.)

On direct appeal, Petitioner argued that the trial court violated his right to due process by failing to provide a reasonable doubt jury instruction. In denying relief, the Arizona Supreme Court noted that "there is no requirement that a trial court define reasonable doubt for the jury." *Jackson*, 186 Ariz. at 27, 918 P.2d at 1045. This Court agrees.

"The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Id.* (internal quotation and citations omitted). Thus, the trial court did not constitutionally err by failing to provide a definition of reasonable doubt prior to deliberations. The Arizona Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law.

Recognizing that the United States Constitution does not require courts to define reasonable doubt, Petitioner argues instead that the prosecutor's closing argument was tantamount to a jury instruction. He argues that the trial court's failure to "correct" the prosecutor's statements (by providing the definition of reasonable doubt in a jury instruction) implicitly conveyed to the jury that the prosecutor's description of reasonable doubt was accurate. (Dkt. 41 at 12.) He asserts that the prosecutor's erroneous "instruction" violated his rights under *Cage v. Louisiana*, 498 U.S. 39 (1990), and *Sullivan v. Louisiana*, 508 U.S. 275 (1993). However, it is well established that "arguments of counsel generally carry less weight with a jury than do instructions from the court" and "are not to be judged as having the same force as an instruction from the court." *Boyde v. California*, 494 U.S. 370, 384-85

1   (1990) (observing that juries generally view closing arguments more "as the statements of

2   advocates" than as "definitive and binding statements of the law"). Rather, such arguments

3   "must be judged in the context in which they are made." *Id.*

4   Petitioner contends that the prosecutor's closing argument improperly conveyed to the

5   jury that it need only "believe" Petitioner was guilty or involved in order to find that the State

6   had proven its case beyond a reasonable doubt. This hardly rises to the level of the jury

7   instruction in *Cage*, wherein the trial court equated reasonable doubt with "grave

8   uncertainty" and "actual substantial doubt." 498 U.S. at 40. Rather, the prosecutor here told

9   the jurors it was up to them to figure out the meaning of reasonable doubt and then suggested

10  the standard would be satisfied if all twelve "believed" Petitioner was guilty. The Court

11  concludes that there is no reasonable likelihood this statement, when viewed in context,

12  caused the jurors in Petitioner's case to apply a higher degree of doubt than is required for

13  acquittal under the Due Process Clause. Therefore, Petitioner is not entitled to relief on this

14  aspect of Claim 1.

15  Similarly, Petitioner is not entitled to relief on his IAC allegations. To prevail on an

16  IAC claim, a petitioner must show that counsel's performance was deficient and that the

17  deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687

18  (1984). Trial counsel moved for a mistrial based in part on the prosecutor's closing argument

19  (Dkt. 24, Ex. 3 at 6-10), and appellate counsel argued on appeal that he was entitled to a jury

20  instruction on reasonable doubt, especially in light of the prosecutor's closing argument (Dkt.

21  31, Ex. B at 39-41). Indeed, Petitioner notes in his reply brief that he has "complained at

22  every stage about the combination of the trial court's failure to define reasonable doubt and

23  the definition argued by [the prosecutor]." (Dkt. 41 at 6.) Thus, neither attorney "failed to

24  raise the issue" as Petitioner alleges in his petition. (Dkt. 23 at 8.) Moreover, for the reasons

25  already discussed, Petitioner cannot establish prejudice.

26  **Claim 3: Felony-Murder Instruction**

27  Petitioner contends that the trial court's instructions to the jury regarding felony

28

murder unconstitutionally relieved the State of its burden to prove each element of the offense. (Dkt. 23 at 52.) He also alleges IAC on the part of trial counsel for failing to object to the instruction and by appellate counsel for failing to raise the issue on appeal. (*Id.* at 56-57.) Petitioner presented this claim in his PCR petition, but the court addressed only the IAC allegations, not the underlying claim. Because there is no state court ruling on the merits of the underlying claim, this Court's review is de novo. *Pirtle*, 313 F.3d at 1167.

An allegedly improper jury instruction will merit habeas relief only if the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). It is not sufficient for a petitioner to show that the instruction is erroneous; instead, he must establish that there is a reasonable likelihood that the jury applied the instruction in a manner that violated a constitutional right. *Id.*; *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir. 1992) (en banc). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).

Under Arizona law at the time of Petitioner's trial, first degree murder could be established by demonstrating that a person, "[a]cting either alone or with one or more other persons" "commits or attempts to commit [certain enumerated felonies] and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person." A.R.S. § 13-1105(A)(2) (West 1989). At the close of Petitioner's trial, the court gave the following jury instruction:

> A person commits first degree murder if such person, acting alone or with one or other persons, commits or attempts to commit a robbery or kidnapping, and in the course of, and in furtherance of such offense, or the immediate flight from such offense, such person or another person causes the death of any person. This type of first degree murder requires no specific mental state other than that which is required for the commission of the offense

of robbery or kidnapping.

"In the course of committing" includes any of the defendant's acts, beginning with the initiation and extending through the flight from a robbery or kidnapping.

With respect to the felony murder rule, insofar as it provides the basis for a charge of first degree murder, it is not necessary that the State prove that the defendant intended to kill.

With respect to the felony murder rule, insofar as it provides the basis for a charge of first degree murder, it is the law that *there is no requirement that the killing occur while committing or engaged in the felony* or that the killing be a part of the felony. The homicide may not need to have been committed to perpetrate the felony. *It is enough if the felony and the killing were part of the same series of events.*

(Dkt. 26, Ex. 41(emphasis added); *see also* Dkt. 26, Ex. 37.)

Petitioner argues that the "same series of events" aspect of the instruction relieved the State of proving that the murder was "in furtherance of" the underlying felony and that instructing the jury "there is no requirement that the killing occur while committing or engaged in the felony" relieved the State of proving that the murder occurred in the "course of" the underlying felony. (Dkt. 23 at 52.) He asserts that the court's instructions were based on an older felony-murder statute that did not include the "in the course of and in the furtherance of" language added in 1978. *See* A.R.S. § 13-452 (West 1956) (repealed by Laws 1977, Ch. 142 § 15, eff. Oct. 1, 1978); *State v. Richmond*, 112 Ariz. 228, 232, 540 P.2d 700, 704 (1975) (holding that link between felony and murder satisfied where both were part of "same series of events").

In its decision upholding the conviction of Petitioner's co-defendant, Kevin Miles, the Arizona Supreme Court expressly addressed this issue:

Miles argues that the last sentence [of the court's felony-murder jury instruction] invited the jury to ignore the causal connection required between the underlying felonies and the death, or, at the least, it permitted the jury to consider a more attenuated causal relationship than permitted by the felony murder statute. See A.R.S. § 13-1105(A)(2). We disagree.

In giving the instruction, the trial court relied on *State v. Richmond*, 112 Ariz. 228, 540 P.2d 700 (1975). In *Richmond*, we held that where the felony and the murder were part of the same series of events, the necessary link between the felony and the murder was satisfied. *Id.* at 232, 540 P.2d at 704. In response, Miles argues that *Richmond* does not apply because it preceded

the enactment of the 1978 criminal code. However, after the felony murder statute was amended, we rejected the argument that the addition of the language "in furtherance of" narrowed the application of the felony murder statute. *State v. Arias*, 131 Ariz. 441, 443, 641 P.2d 1285, 1287 (1982). Moreover, the court gave the "in the course of and in the furtherance of" language of the statute. Thus, the instruction taken as a whole does not mislead the jury. Nevertheless, we discourage its use, and recommend the use of the statutory language as illustrated in Recommended Jury Instruction (Criminal) 11.052.

There is no doubt that the murder was "in furtherance" of the robbery and kidnapping. A death is "in furtherance" of the underlying felony if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies. Here, the victim was murdered to obtain her car and its contents. The robbery and kidnapping continued through the time of the murder. The victim was killed before the completion of the robbery. There was no error.

*State v. Miles*, 186 Ariz. 10, 15, 918 P.2d 1028, 1033 (1996) (internal citations omitted).

The crux of Petitioner's argument in support of Claim 3 is that the 1978 amendment to the felony-murder statute "narrowed" the scope of that offense by adding the "in furtherance of" language, that the Arizona Supreme Court in *Miles* misconstrued its *Arias* ruling that the 1978 amendment did not effect such a narrowing, and that the *Miles* decision effectively enlarged the post-amendment felony-murder statute to its pre-1978 definition, in violation of the *ex post facto* clause. (Dkt. 23 at 57.) However, it is not the province of a federal habeas court to question a state court's construction of state law. *McGuire*, 502 U.S. at 72. Moreover, as aptly set forth by the Arizona Supreme Court in *Miles*, the jury was properly instructed that it had to find that the murder was committed in the course of and in the furtherance of robbery or kidnapping, and there is little question that there was sufficient evidence to establish the "in furtherance of" element. 186 Ariz. at 15, 918 P.2d at 1033.

The evidence at trial established that Patricia Baeuerlen was last seen on December 7, 1992, near her car in the parking lot of her apartment complex in Tucson. (RT 9/21/93 at 79-83.)[4] Her boyfriend testified that there were three or four young people standing nearby

---

[4]    "RT" refers to the court reporter's transcript. "ROA" refers to eight volumes of consecutively-numbered pleadings that comprise the record on appeal from Petitioner's direct appeal to the Arizona Supreme Court (Case No. CR-94-0045-AP). At this Court's request, the Arizona Supreme Court provided a copy of these records as well as the original

as he drove out of the area. (*Id.* at 88-89.) Two days later, Kevin Miles was apprehended in Phoenix while driving the victim's car. (*Id.* at 124-26.) He was in possession of the victim's jewelry, her ATM card, and a piece of paper with her personal identification number for the ATM card. (*Id.* at 127-28.) Fingerprints taken from inside the victim's car and on items found in the vehicle matched those of Petitioner. (*Id.* at 186.)

In the course of the investigation, detectives spoke with several of Petitioner's acquaintances, some of whom relayed incriminating statements from Petitioner. Petitioner told Gabriel Cox that one of Petitioner's friends suggested they take a car and that they subsequently pulled a gun on a woman in a car, told her to move over, and drove her somewhere. (RT 9/22/93 at 31-34.) Petitioner told Cox that he forced the woman out of the car and then, at his friends' urging, shot her. (*Id.* at 36.) Petitioner also said that one of his friends took the car to Phoenix. (*Id.* at 39.) To his friend Corey Holleman, Petitioner stated that he had taken a car from "some dead old lady." (*Id.* at 106.) To Lonnie Bailey, Petitioner said he and his friends had done "the carjacking where the lady got killed." (RT 9/23/93 at 114.) Finally, Petitioner told Vince Lombardino that he and a friend were looking for a car, the friend gave him a gun, Petitioner approached a car from the driver's side and asked the woman for a light, Petitioner pulled the gun and told her to scoot over, Petitioner drove the woman and his friend to a desert area and parked, the friend forced the woman out of the car while Petitioner waited, Petitioner heard a scream and a gunshot, and then his friend jumped back into the car and they drove away. (*Id.* at 154, 160-64.)

In *Miles*, the Arizona Supreme Court stated that a death is "in furtherance" of an underlying felony "if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies." 186 Ariz. at 15, 918 P.2d at 1033. Here, it is apparent from the evidence presented at trial that Ms. Baeurelen was murdered so that Petitioner and his accomplices could obtain her car and other valuables, and nothing in the trial court's instructions relieved the State of its burden of proving the "in furtherance of"

---

court reporter's transcripts for use in these proceedings. (*See* Dkt. 32.)

element for felony first degree murder.  Thus, Petitioner's right to due process was not violated, and neither trial nor appellate counsel rendered constitutionally deficient representation by failing to object to the court's instructions.

**Claim 4:  Jury Coercion**

After the jury had deliberated for four hours on a Friday afternoon and one-and-a-half hours the following Monday morning, the foreperson sent a note that read: "Three jurors are voting not guilty due to lack of convincing evidence.  None appear to be willing to change his mind.  Suggestions as to how to proceed would be appreciated."  (Dkt. 26, Ex. 44 at 2, 6.)  The court instructed the bailiff to tell the jury to deliberate for another 20 minutes until noon, go to lunch, and return at 1:00 to resume deliberations.  (*Id.* at 9-10.)  Five minutes later, the bailiff reported back to the court that the jury had asked whether there would be an answer to its question and, at the court's earlier direction, had informed it an answer would be forthcoming.  (*Id.* at 10-11.)  Although the court had told counsel it would bring the jury into the courtroom at 1:30 to inquire whether there was a reasonable probability it could reach a verdict, an unrelated matter occupied the judge until 2:00 p.m.  (*Id.* at 13-14.)  Around this same time, the jury indicated it had reached a verdict.  (*Id.* at 14.)

Petitioner argues that the trial court's failure to immediately inform the holdout jurors not to surrender their own conscientiously-held beliefs implicitly coerced them into reaching a guilty verdict.  (Dkt. 23 at 61.)  In rejecting this claim on appeal, the Arizona Supreme Court stated:

> When and whether to discharge a jury is within the sound discretion of the trial judge.  The test for coerciveness is whether the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors.
>
> Looking to the totality of the circumstances, we find no coercion.  First, the jury did not deliberate for an extraordinarily long time before reaching its verdict.  The jury deliberated for 5 ½ hours before sending the note to the judge and 2 ½ more hours before reaching its verdict.  The trial lasted 5 days, during which the state called 22 witnesses and introduced 52 exhibits.  Second, Jackson's argument is one of omission.  He argues that the court coerced the jury not by what he told them, but by a failure to act more quickly.  Judgments about the reasonableness of the time allowed to reach a verdict and the timing of asking questions under Rule 22.5(b), Ariz. R. Crim. P., (the reasonable

probability question) are largely within the discretion of the trial court. There was no abuse of discretion here.[FN2]

> FN2. Now see Rule 22.4, Ariz. R. Crim. P.

*Jackson*, 186 Ariz. at 28, 918 P.2d at 1046.

In *Lowenfeld v. Phelps*, 484 U.S. 231, 237-41 (1988), the Supreme Court recognized the discretion of a trial court in addressing a deadlocked jury and looked to the totality of the circumstances in evaluating the trial court's actions. Petitioner relies on *Jenkins v. United States*, 380 U.S. 445 (1965). In that case, the Court found the trial court's directive to the deadlocked jurors – "You have got to reach a verdict in this case" – to be unfairly coercive. *Id.* at 445. No such instruction was given here. Indeed, Petitioner's complaint stems from the lack of any instruction from the trial court. Considering the totality of the circumstances, the Court finds that the situation in Petitioner's case was not unduly coercive. The Arizona Supreme Court's resolution of this claim was not based on an unreasonable application of the facts or of clearly established federal law.

**Claim 5: Death-Qualification of the Jury**

Petitioner argues that the trial court violated his constitutional rights by death-qualifying the venire without also asking whether the potential jurors would automatically impose the death penalty if the defendant were convicted of first degree murder (the "reverse-*Witherspoon* question"). (Dkt. 23 at 64.) Petitioner further asserts that appellate counsel was ineffective for failing to raise this claim on appeal. (*Id.*) Respondents address only the IAC aspect of this claim, conceding it was exhausted in Petitioner's PCR petition[5]; they do not assert procedural default of the underlying reverse-*Witherspoon* claim. (Dkt. 30 at 25.) Regardless of exhaustion, the Court will address the claim because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

---

[5] The PCR court summarily denied relief, stating that Petitioner had not shown that the failure to raise this issue fell below prevailing professional norms or that the Arizona Supreme Court would have decided the appeal differently had counsel raised it. (Dkt. 31, Ex. L at 2.)

During voir dire, the trial court questioned potential jurors in small groups. The court informed each group that Petitioner could be sentenced to life imprisonment or the death penalty if convicted of first degree murder, stated that the sentencing decision was solely the court's and not left to the jury, and asked if any member of the venire had "conscientious or religious scruples or feelings that would prevent you from voting for first degree murder because of the possible imposition of the death penalty." (RT 9/17/93 at 52-53; *see also id.* at 73-74, 76-77, 84, 95, 105-06, 119-20, 128-29, 141-42, 155, 184-85, 198-99, 205, 216.) Of the 90 jurors questioned, seven indicated they would have difficulty because of their beliefs against the death penalty. (*Id.* at 128, 142, 155, 185.) Upon further questioning, the court excused three for cause (*id.* at 152, 174, 213; ROA at 654-59), and the prosecution exercised a peremptory strike against one (ROA at 653).

Petitioner argues that the trial court violated his constitutional rights by applying *Witherspoon v. Illinois*, 391 U.S. 510 (1968), to remove potential jurors with "strong feelings against the death penalty," without also applying *Morgan v. Illinois*, 504 U.S. 719 (1992), to remove potential jurors who were strong supporters of the death penalty. This, Petitioner argues, "unbalanced the jury panel by identifying and removing liberal jurors without removing conservative jurors." (Dkt. 23 at 65.) He further asserts that "this distortion" interfered with his trial counsel's ability to intelligently exercise peremptory strikes (resulting in structural error) and would have been grounds for automatic reversal had the claim been raised on direct appeal. (*Id.* at 67-68.)

A defendant is entitled to "a fair trial by a panel of impartial, indifferent jurors," which includes "an adequate *voir dire* to identify unqualified jurors." *Morgan*, 504 U.S. at 727, 729. However, "[t]he adequacy of *voir dire* is not easily the subject of appellate review," *id.* at 730, and "the trial court retains great latitude in deciding what questions should be asked on *voir dire*," *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). *See Ristaino v. Ross*, 424 U.S. 589, 594 (1976). Moreover, and critical to this case, in both *Witherspoon* and *Morgan*, the Court stated that the holdings announced therein affect only a sentence of death, not any non-

capital sentence or the underlying conviction. *Morgan*, 504 U.S. at 739 n.11; *Witherspoon*, 391 U.S. at 523 n.21. Because Petitioner is challenging only his conviction and non-capital sentences and is no longer under a sentence of death, this claim necessarily fails.

**Claim 6: "Golden Rule" Argument**

In rebuttal closing argument, the prosecutor stated:

> Just because Levi Jackson was using her car doesn't mean he killed her. That's true. That fact alone doesn't mean he killed her. But if somebody finds your body dead in the desert and your car missing and three hours later somebody is using your car, would you want us to look to see who this person is and put some suspicion on him. And if that person's prints are in your car, would you like us to focus a little bit more? If that person has your jewelry and gives it to his girlfriend, would you want us to be a little more suspicious. And that person is rummaging through a bag in your trunk. There is no other reason he would rummage through. Would you like us to really concentrate on that guy, and if that guy confesses to five other people: No, can't be him, let's go find the other killer. I'm being sarcastic and I apologize. That's ridiculous, what you're being asked to ignore and blow off and buy into the speculation.

(Dkt. 26, Ex. 53.) Petitioner contends that this argument amounted to asking the jury to put itself in the plaintiff's position and to "do unto him as they would have done unto them under similar circumstances." (Dkt. 23 at 72 (quoting *Rojas v. Richardson*, 703 F.2d 186, 190 (5th Cir. 1983).) He further asserts that trial counsel's failure to object and appellate counsel's failure to raise the issue on appeal deprived him of his Sixth Amendment right to effective assistance of counsel.[6] (*Id.* at 73.) The Court disagrees.

First, nothing in the prosecutor's argument urged the jury to decide the case on personal interest or bias rather than on the evidence, as occurred in the two cases relied on by Petitioner: *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) (prosecutor asked the jury, "if it happened to you and you had nothing to hide"); and *Rojas*, 703 F.2d at 190 (in negligence case, employer's counsel improperly described plaintiff employee as an illegal alien and asked jurors to imagine themselves as illegal aliens in arguing that the plaintiff

---

[6]  Respondents address the procedural status only of Petitioner's IAC allegations; they do not address the underlying substantive claim. (Dkt. 30 at 26.) However, as with Claim 5, the Court will address the entirety of Claim 6 because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2); *Rhines,* 544 U.S. at 277.

should not be treated with "extra benefits"). Second, the prosecutor was directly responding to defense counsel's insinuation that investigators wrongly focused on Petitioner and his argument that Petitioner's connections to the victim's car and possessions did not establish that he was involved in her murder. (*See, e.g.*, RT 9/24/93 at 47-48.) This was reasonable rebuttal argument and did not render Petitioner's trial fundamentally unfair. *Cf. Drayden v. White*, 232 F.3d 704, 712-13 (9th Cir. 2000) (finding no due process violation where prosecutor inappropriately implied his role was to exact revenge on behalf of victim when he sat in witness chair and "testified" about commission of the crime as if he were the victim). Whether considered as a stand-alone claim or as trial and appellate IAC, Claim 6 is plainly meritless.

**Claim 7: Intent Instruction**

The trial court gave the following instruction concerning intent:

> The State must prove that the defendant has done an act which is forbidden by law and that he intended to do it. *You may determine that the defendant intended to do the act if he did it voluntarily*. The State does not have to prove that the defendant knew the act was forbidden by law.

> "Intentionally" or "with the intent to" as used in these instructions means that a defendant's objective is to cause that result or to engage in that conduct.

> Intent may be inferred from all of the facts and circumstances disclosed by the evidence. It need not be established exclusively by direct sensory proof. The existence of intent is one of the questions of facts for your determination.

(Dkt. 26, Ex. 54 (emphasis added).) Petitioner argues that this instruction violated *Sandstrom v. Montana*, 442 U.S. 510 (1979), *Connecticut v. Johnson*, 460 U.S. 73 (1983), and *In re Winship*, 397 U.S. 358 (1970). (Dkt. 23 at 75-76.) He further asserts that trial counsel's failure to object and appellate counsel's failure to raise the issue on appeal deprived him of his Sixth Amendment right to effective assistance of counsel.[7] The Court disagrees.

---

[7] Respondents address the procedural status only of Petitioner's IAC allegations; they do not address the underlying substantive claim. (Dkt. 30 at 27.) However, as with Claims 5 and 6, the Court will address the entirety of Claim 7 because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277.

The instructions at issue in *Sandstrom* and *Johnson* involved a *presumption* of intent if voluntariness were found by the jury. *Sandstrom*, 442 U.S. at 513 ("The law presumes that a person intends the ordinary consequences of his voluntary acts."); *Johnson*, 460 U.S. at 78 ("[A] person's intention may be inferred from his conduct and every person is conclusively presumed to intend the natural and necessary consequences of his act."). Here, the court instructed the jury only that it was *permitted* to find intent based on Petitioner's voluntary actions. As Petitioner himself acknowledges, the Arizona Supreme Court has previously held that an instruction identical to that given here "left the jury free to accept or reject the inference, and did not affect the state's burden of proof." *State v. Moya*, 138 Ariz. 12, 14-15, 672 P.2d 964, 966-67 (1983); *see also State v. Lara*, 183 Ariz. 233, 235 n.4, 902 P.2d 1337, 1339 n.4 (1995). The Ninth Circuit Court of Appeals has also held that the instruction at issue here is a permissive inference, which does not violate *Sandstrom*. *See Evans v. Lewis*, 855 F.2d 631, 635-36 (9th Cir. 1988) (finding instruction "[y]ou may determine that the defendant intended to do the act if he did it voluntarily" passes constitutional muster because it merely "allows the jury to infer intent and does not require a presumption of intent."). Whether considered as a stand-alone claim or as trial and appellate IAC, Claim 7 is plainly meritless.

**Claim 10: Prosecutorial Misconduct**

Nearly three weeks before trial, the prosecution informed the defense that co-defendant Ray Hernandez had agreed to plead guilty in exchange for his testimony against Petitioner and co-defendant Miles. (Dkt. 26, Ex. 55 at 4-5.) Although the prosecution did not make any assertions regarding Hernandez as a witness in its opening statement, defense counsel in his opening statement stated that the prosecution was planning to call Hernandez, who had cut a deal to testify that Petitioner shot the victim. (Dkt. 26, Ex. 62 at 64.) The State ultimately called Hernandez as a witness only for sentencing, not trial.

Petitioner argues that he was denied due process and effective assistance of counsel when the prosecutor misled trial counsel into discussing in his opening statement the

expected testimony of Hernandez, who was never called as a witness. (Dkt. 23 at 85.) Petitioner presented these allegations in his PCR petition, but the court addressed only the IAC aspect, not the underlying claim. Because there is no state court ruling on the merits of the underlying claim, this Court's review of that part of Claim 10 is de novo. *Pirtle*, 313 F.3d at 1167.

The appropriate standard of federal habeas review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)) (petitioner not entitled to relief in the absence of a due process violation even if the prosecutor's comments were "undesirable or even universally condemned"). Therefore, in order to succeed on this claim, Petitioner must prove not only that the prosecutor's remarks and conduct were improper but that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*; *see Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Petitioner has failed to meet this burden.

Petitioner complains that the prosecution purposefully misled the defense into believing Hernandez would testify. However, he proffers no evidence to support this speculative assertion. Nor does Petitioner cite any authority to suggest that the prosecution was required to call Hernandez as a witness in these circumstances. Finally, the Court can discern no actual prejudice from the prosecutor's alleged misconduct. As previously recounted, there was substantial evidence to support Petitioner's convictions, including numerous witnesses who testified that Petitioner himself claimed to have shot the victim, thus mitigating the impact of defense counsel's opening statement concerning Hernandez's

intended testimony. Moreover, the prosecution's decision not to call Hernandez provided an opportunity for defense counsel to insinuate during closing argument that the government now questioned Hernandez's truthfulness. (*See* RT 9/24/93 at 40.) The Court concludes that Petitioner was not denied due process as a result of the prosecutor's actions with regard to calling Hernandez as a witness.

Because this claim lacks merit, it was not unreasonable for trial counsel not to object to the prosecution's conduct or for appellate counsel not to raise this claim on appeal. The PCR court's rejection of Petitioner's IAC allegations was neither contrary to nor an unreasonable application of *Strickland*.

**Claim 13: Lesser-included Offense Instruction**

Petitioner argues that he was entitled to a lesser-included offense instruction because the evidence supported a finding that he did not premeditate the killing. (Dkt. 23 at 110.) In denying relief of this claim on direct appeal, the Arizona Supreme Court held:

> A lesser included offense instruction is proper only where the evidence supports such an instruction. *State v. Salazar*, 173 Ariz. 399, 408, 844 P.2d 566, 574 (1992). "To determine whether there is sufficient evidence to require the giving of a lesser included offense instruction, the test is 'whether the jury could rationally fail to find the distinguishing element of the greater offense.'" *State v. Krone*, 182 Ariz. 319, 323, 897 P.2d 621, 625 (1995) (quoting *State v. Noriega*, 142 Ariz. 474, 481, 690 P.2d 775, 782 (1984)). Of course, there is no lesser included offense to felony murder. *State v. Landrigan*, 176 Ariz. 1, 5, 859 P.2d 111, 115 (1993).

> At trial, the state proceeded on dual theories of felony murder and premeditated murder, and the jury convicted Jackson by general verdict. For a second degree murder instruction to be warranted, a jury would have to rationally conclude that premeditation was lacking. *Krone*, 182 Ariz. at 323, 897 P.2d at 625. Jackson claimed at trial that he was not responsible for the victim's death. He did not claim that he had killed her but lacked premeditation, nor does the record support such a finding. "Because defendant's theory of the case denies all involvement in the killing, and no evidence provides a basis for a second degree murder conviction, the instruction was properly refused. When the record is such that defendant is either guilty of the crime charged or not guilty, the trial court should refuse a lesser included instruction." *Salazar*, 173 Ariz. at 408, 844 P.2d at 574.

*Jackson*, 186 Ariz. at 27, 918 P.2d at 1045.

Due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. *Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Beck v.*

*Alabama*, 447 U.S. 625, 637-38 (1980).  A lesser included offense instruction is warranted

if "there was evidence which, if believed, could reasonably have led to a verdict of guilt of

a lesser offense."  *Hopper*, 456 U.S. at 610.  The Ninth Circuit has "interpreted *Beck* and

*Hopper* not to require a second-degree murder instruction where evidence of premeditation

is overwhelming and the petitioner's defenses are not directed at negating premeditation."

*Cook v. Schriro*, 516 F.3d 802, 825 (9th Cir. 2008).  Both factors are present here.  As noted

by the Arizona Supreme Court, Petitioner did not argue, and the evidence did not show, that

he lacked premeditation; rather, he denied all involvement in the killing.  There was no

evidence to support a conviction on second-degree murder; therefore, a lesser-included

offense instruction was not warranted.  The Arizona Supreme Court's resolution of this claim

was not based on an unreasonable application of the facts or clearly established federal law.

**Claim 14: Co-Defendant's Prior Bad Acts**

Petitioner argues that the trial court "committed reversible error" by denying his

motion under Arizona Rule of Evidence 404(b) to admit evidence of co-defendant Miles's

prior robberies of women using a firearm.  (Dkt. 23 at 115.)  The Arizona Supreme Court

denied Petitioner's evidentiary claim on direct appeal, stating:

> Rule 404(b), Ariz. R. Evid., allows evidence of other crimes to prove identity, but "the modus operandi of and the circumstances surrounding the two crimes must be sufficiently similar" as to be like a signature. *State v. Brown*, 125 Ariz. 160, 161, 608 P.2d 299, 300 (1980); John W. Strong, *McCormick on Evidence* § 190, at 801-03 (4th ed. 1992).
>
> Here, the crimes charged and Miles's prior armed robberies are not sufficiently similar to show that the trial judge abused his discretion in excluding this evidence.  The record indicates that Miles pled guilty to three armed robberies that occurred before the kidnapping and murder in this case.  Jackson argued at trial that this evidence proved that Miles, and not he, planned the abduction and murder.  The similarities between Miles's three armed robberies and this case are: (1) the victims were women, and (2) in two of the armed robberies Miles used a semi-automatic weapon.
>
> The differences, however, outweigh the similarities.  First, the armed robberies did not involve a kidnapping.  Second, no shots were fired, and no injuries occurred.  Third, no vehicle was stolen or involved.  We find no abuse of discretion.

*Jackson*, 186 Ariz. at 26-27, 918 P.2d at 1044-45.

In general, state law matters, including a trial court's evidentiary rulings, are not proper grounds for habeas corpus relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. at 67-68 (internal quotation omitted); *see Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Only if the evidentiary ruling was so prejudicial as to offend due process may the federal courts properly consider it. *See, e.g.*, *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).

The United States Supreme Court has "very narrowly" defined the category of infractions that violate the due process test of fundamental fairness. *Dowling v. United States*, 493 U.S. 342, 352 (1990). Petitioner does not cite, and the Court has not found, any cases holding that the failure to admit evidence of other crimes or bad acts by a co-defendant is so extremely unfair that it violates fundamental conceptions of justice. Thus, there is no clearly established Supreme Court precedent which holds that a state violates due process by failing to admit evidence of a co-defendant's prior bad acts. *See, e.g.*, *Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003) (state court decision allowing admission of evidence pertaining to petitioner's alleged prior, uncharged acts of child molestation was not contrary to clearly established Supreme Court precedent because there was no such precedent holding that state violated due process by permitting propensity evidence in the form of other bad acts evidence).

Based upon these principles, it is clear that the failure to admit the contested evidence does not constitute a basis for habeas relief. There was no due process violation because failure to admit the evidence did not render Petitioner's trial unfair; Miles's prior armed robberies were sufficiently different from the carjacking here, did nothing to exculpate Petitioner, and were of minimal impact given that Miles's involvement in the offense was not contested by the prosecution. Finally, even if a due process violation had occurred, Petitioner would not be entitled to relief. This Court, having undertaken its own harmless

error review pursuant to *Brecht*, concludes that there is no probability the precluded evidence would have affected the verdict in light of the overwhelming evidence that Petitioner was involved in the victim's kidnapping, robbery, and murder.

**Claim 16:  Consecutive Sentences**

Petitioner argues that imposition of consecutive terms of imprisonment for the felony murder conviction and the underlying robbery and kidnapping felony convictions violates the Double Jeopardy Clause.[8]  (Dkt. 45 at 2.)  In rejecting this claim, the Arizona Court of Appeals ruled:

> Jackson argues his double jeopardy rights were violated when he was sentenced to consecutive terms for felony murder and the underlying felonies. The Fifth Amendment guarantee against double jeopardy "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989).  To support his proposition, Jackson relies on three United States Supreme Court cases: *Jones v. Thomas*, 491 U.S. 376, 109 S. Ct. 2522 (1989); *Whalen v. United States*, 445 U.S. 684, 100 S. Ct. 1432 (1980); and *Harris v. Oklahoma*, 433 U.S. 682, 97 S. Ct. 2912 (1977).
>
> But, in both *Jones* and *Whalen*, the Court focused its inquiry on whether the total punishment exceeded that authorized by the legislature.  *See Jones*, 491 U.S. at 381, 109 S. Ct. at 2525 ("[T]he interest the Double Jeopardy clause seeks to protect . . . in the multiple punishments context . . . is 'limited to ensuring that the total punishment did not exceed that authorized by the legislature.'"), *quoting United States v. Halper*, 490 U.S. 435, 450, 109 S. Ct. 1892, 1903 (1989), *abrogated on other grounds by Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488 (1997); *Whalen*, 445 U.S. at 668, 100 S. Ct. at 1436 ("[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized.").  And, in those cases, the Court found the respective legislatures had not intended to allow punishment for both felony murder and the underlying felony. *Jones*, 491 U.S. at 381, 109 S. Ct. at 2525; *Whalen*, 445 U.S. at 690, 100 S. Ct. at 1437.
>
> Our own supreme court has squarely addressed the double jeopardy claim Jackson raises – and has repeatedly made clear that the Arizona legislature, through its sentencing scheme, "specifically permits the imposition

---

[8]   Petitioner argues that because the jury returned a general verdict of guilt on first degree murder, without any indication of whether it unanimously found him guilty of felony murder, premeditated murder, or both, the Court should assume he was convicted of felony murder.  (Dkt. 45 at 2 n.1.)  Because the Court concludes that this claim lacks merit, it need not reach this issue.

of consecutive sentences." *State v. Rumsey*, 130 Ariz. 427, 431, 636 P.2d 1209, 1213 (1981) (finding *Whalen* inapplicable because it addressed a different sentencing scheme); *see also State v. Wiley*, 144 Ariz. 525, 541, 698 P.2d 1244, 1260 (1985) ("[C]onviction and sentence for both felony murder and the underlying felony is constitutionally permissible."); *State v. Gerlaugh*, 134 Ariz. 164, 170, 654 P.2d 800, 806 (1982) (affirming consecutive sentences for felony murder and underlying felony); *State v. Miniefield*, 110 Ariz. 599, 603, 522 P.2d 25, 29 (1974) (same). Because our legislature clearly intended to allow cumulative punishments for felony murder and the underlying felony and because both the United States Supreme Court and the Arizona Supreme Court have anchored double jeopardy analysis in this context in the intent of the legislature, we conclude Jackson's consecutive sentences do not violate the Double Jeopardy Clause of the United States or Arizona Constitution.

(Dkt. 49-3 at 4-5 (footnotes omitted).)

Petitioner does not acknowledge the state court's ruling or address the AEDPA standards of review. As he did in state court, he cites *Jones* and *Whalen*, as well as a litany of non-Arizona state court cases. (Dkt. 45 at 2-5.) However, he fails to explain how the state court's analysis under *Jones* and *Whalen* is unreasonable and does not address the appellate court's conclusion that the Arizona legislature intended to allow cumulative punishments for felony murder and the underlying felony. Petitioner has failed to demonstrate that the decision of the Arizona Court of Appeals denying this claim is either contrary to or an unreasonable application of controlling Supreme Court law.

**Claim 17: In Absentia Sentencing**

After Petitioner filed a petition for state post-conviction relief based on *Roper. v. Simmons*, he requested a status conference with the trial court. (Dkt. 49-4 at 2.) At the start of the hearing, Petitioner's counsel waived his client's presence. (*Id.*) During the hearing, the court observed that under Arizona law at the time of Petitioner's crime, the only sentencing alternative to the death penalty for first degree murder was a 25-to-life term of imprisonment; the "life without possibility of parole" option was not yet in effect. (*Id.* at 5-7.) The court stated that at the time Petitioner was originally sentenced to death, the court had also sentenced him to aggravated 21-year terms on the kidnapping and armed robbery counts, to be served consecutively to each other and to the death penalty, and that these sentences were unaffected by *Roper*. (*Id.* at 5.) Consequently, the court concluded that a

- 25 -

formal resentencing hearing was unnecessary and, over defense counsel's objection, proceeded to modify Petitioner's sentence on the murder count. (*Id.* at 9, 18-19.)

Petitioner argues that the state court's in abstentia resentencing violated his right to due process. (Dkt. 45 at 5.) In denying relief on this claim, the state appellate court ruled that because the trial court had no discretion but to modify Jackson's sentence as it did, "Jackson's absence from the proceeding could not have affected its outcome." (Dkt. 49-3 at 7.)

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, a defendant's absence does not violate due process where his presence is not needed to ensure fundamental fairness and he could not add anything to the proceeding or gain by being present. *United States v. Gagnon*, 470 U.S. 522, 526-27 (1985) (per curiam). Applying this standard, the Court concludes that the state court's 2005 sentencing modification was not a critical stage of the proceedings.

Petitioner does not dispute that following *Roper* the state court had no sentencing option for the murder conviction except to impose life with the possibility of parole after 25 years; he was no longer eligible for the death penalty and a natural life sentence was not available at the time of his crime. Rather, he argues he had a right to be heard on the question of consecutive or concurrent sentences, as well as "the court's decision to leave the aggravated sentences in place on the underlying felonies." (Dkt. 45 at 8.) However, Petitioner does not explain how the invalidation of his death sentence as a result of *Roper* also invalidated the sentences for his non-capital counts or the trial court's decision at his 1994 sentencing that the sentences for each count run consecutively. Petitioner was present at the original sentencing hearing and did not object or appeal the state court's imposition of aggravated, consecutive sentences for the kidnapping and armed robbery convictions. This Court concludes that the trial court's 1994 decision to impose aggravated sentences for the

non-capital counts and to run the sentences for each count consecutively was not affected by *Roper*. Consequently, the only issue before the state court at the 2005 proceeding was the reduction of sentence on the murder count, and the parties agreed that a 25-to-life term of imprisonment was the only available option on this count. Thus, the 2005 modification hearing was not so critical that due process required Petitioner's presence. Even assuming Petitioner's absence amounted to constitutional error, the Court concludes the error was harmless.

The Supreme Court has recognized that most constitutional errors can be harmless. *Arizona v. Fulminante*, 499 U.S. 279, 306-07 (1991). Only in those limited cases where the constitutional deprivation affects "the framework within which the trial proceeds," is the integrity of trial process so compromised that the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Id.* at 310. The examples of structural error are few and concern some of the criminal justice system's most important protections. *Waller v. Georgia*, 467 U.S. 39 (right to public trial); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (right to self-representation); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (right to impartial judge). The absence of Petitioner at the court's sentencing modification hearing does not fall into this category of cases.

As already stated, following *Roper*, the state court had no discretion in modifying the sentence for Petitioner's murder conviction. At the hearing, the court took no evidence, and the parties made no arguments concerning the appropriateness of replacing the death sentence with a term of 25-to-life imprisonment. The issue of consecutive sentences had already been decided in 1994 and was not affected by the *Roper* decision. Thus, Petitioner's desired arguments on this issue would not have affected the outcome; in essence, he had "no active role to play." *Rice v. Wood*, 77 F.3d 1138, 1142 (9th Cir. 1996) (en banc) (holding that defendant's absence during pronouncement of verdict not within narrow category of structural errors); *see also Hegler v. Borg*, 50 F.3d 1472, 1476-77 (9th Cir. 1995) (holding

that the "determinative factor" as to whether the defendant's absence constituted a structural error was whether the defendant's ability to "influence the process was negligible"). The Court concludes that Petitioner's exclusion from the modification hearing does not amount to structural error.

Pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), a constitutional error is deemed harmless unless it has a "substantial and injurious effect or influence in determining the jury's verdict." In this case, the Arizona Court of Appeals found that Petitioner's absence from the 2005 proceeding was harmless because "the trial court had no discretion but to modify Jackson's sentence as it did." (Dkt. 49-3 at 7.) For the reasons already discussed, this Court agrees. Petitioner has not argued, let alone established, that the state court's ruling is contrary to or an unreasonable application of controlling federal law.

**Claim 18:** *Blakely* **Violation**

Petitioner argues that he is entitled to relief from the aggravated sentences on his kidnapping and armed robbery convictions based on *Blakeley v. Washington*, 542 U.S. 296 (2004) (finding Sixth Amendment violation where imposition of sentence greater than standard range specified under applicable state law was based on findings made by judge, not jury). He acknowledges that *Blakeley* does not apply retroactively to cases that were final before that decision was announced, but contends that his kidnapping and armed robbery sentences were no longer final once he was resentenced on the murder conviction. (Dkt. 45 at 10.) In support of this assertion, he argues that resentencing on one count "unbundles the entire 'sentencing package' originally crafted by the sentencing court and puts the entire sentence on the table." (*Id.*)

The Arizona Court of Appeals disagreed with Petitioner's theory of finality, noting that the "unbundling" theory of sentencing is found in federal, not Arizona, law. (Dkt. 49-3 at 6.) It further observed that

> Arizona law squarely contradicts Jackson's argument that his sentencing package was "unbundled" after *Roper. See State v. Clabourne*, 194 Ariz. 379, ¶¶ 56-58, 983 P.2d 748, 759 (1999) (holding that resentencing court should not have addressed noncapital sentences because district court had only vacated

- 28 -

defendant's death sentence). We conclude Jackson's aggravated sentences were final at the time *Blakeley* was decided.

(*Id.* at 6-7.)

In this Court, Petitioner reiterates the unbundling argument presented to the state appellate court and the federal cases cited in support, but does not address the state court's ruling or its observation that Petitioner's theory is based solely on federal law. There is little question that Petitioner's convictions and sentences were final at the time *Blakeley* was decided: his direct appeal and petition for certiorari therefrom were denied in 1996, and *Blakeley* was decided in 2004. *See State v. Towery*, 204 Ariz. 386, 389-90, 64 P.3d 828, 831-32 (2003) (stating that case is final when appeals exhausted and petition for certiorari has been decided or time to file petition has lapsed). The Court finds no support for Petitioner's theory that later collateral relief on his murder conviction nullified the finality of his sentences for kidnapping and armed robbery. Petitioner has failed to demonstrate that the decision of the Arizona Court of Appeals denying this claim is either contrary to or an unreasonable application of controlling Supreme Court law.

## APPOINTMENT OF COUNSEL

At the time Petitioner initiated this case, he was under a sentence of death. Consequently, the Court appointed counsel to represent Petitioner pursuant to the statutory authority for such representation then in effect, 21 U.S.C. § 848(q). The Court permitted counsel to continue representation in this Court following the vacation of Petitioner's capital sentence. Because Petitioner has had the benefit of counsel up to this point in these proceedings and counsel is well versed in the case, the Court finds under 18 U.S.C. § 3006A(a)(2)(B) that the "interests of justice" will be furthered by allowing counsel to continue representing Petitioner on any appeal from this order.

## CONCLUSION

The Court has considered Petitioner's claims and determined that he is not entitled to federal habeas corpus relief. The Court further finds that evidentiary development is neither warranted nor required.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus and all amendments and supplements thereto (Dkts. 1, 23, 45) are **DENIED**. The Clerk of Court shall enter judgment accordingly.

DATED this 17th day of November, 2009.

_____
Raner C. Collins
United States District Judge